**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

_____

|                                              |     |                              |
|----------------------------------------------|-----|------------------------------|
| LEON H. RIDEOUT,                             | )   |                              |
| ANDREW LANGLOIS, and                         | )   |                              |
| BRANDON D. ROSS,                             | )   |                              |
|                                              | )   |                              |
|     Plaintiffs,          | )   |                              |
|                                              | )   |                              |
| v.                                           | )   | Civil Case. No. 1:14-cv-00489-PB |
|                                              | )   |                              |
| WILLIAM M. GARDNER, Secretary of             | )   |                              |
| State of the State of New Hampshire, in his  | )   |                              |
| official capacity,                           | )   |                              |
|                                              | )   |                              |
|     Defendant            | )   |                              |
|_____       |)   |                              |

**AMENDED VERIFIED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality, facially and as applied, of RSA 659:35(I).  Under this law, Plaintiffs Leon H. Rideout, Andrew Langlois, Brandon D. Ross, and all New Hampshire voters now face a restraint on pure political speech in violation of the First Amendment.

2.      Effective September 1, 2014, RSA 659:35(I) bans a person from displaying a photograph of a marked ballot, including on the Internet through social media platforms like Twitter, Facebook, and Instagram.  The law contains no exceptions or time limitations.  RSA 659:35(I) encroaches upon the First Amendment by banning voluntary political speech on matters of public concern beyond the polling place (including in one's home) that is not remotely related to the State's purported interest in enacting the law—namely, addressing vote buying and voter coercion.  However, as opposed to restricting sacred political speech unrelated to these

purported interests, the more tailored approach would be to investigate and prosecute vote-buying transactions and incidents of voter coercion—conduct which is already illegal under RSA 659:40(I-II).

3.    What this law ignores is that displaying a photograph of a marked ballot on the Internet is a powerful form of political speech that conveys various constitutionally-protected messages that have no relationship to vote buying or voter coercion.  This form of speech can convey a sense of pride from an 18-year-old, newly-minted voter who is enthusiastic about voting in her first presidential election.  It can convey, as it did with Plaintiff Andrew Langlois who posted a photograph of his marked ballot on Facebook after he voted during the September 9, 2014 primary election, the political message of disappointment with one's choices of candidates.  It can convey, as it did with Plaintiffs Representative Leon H. Rideout and Brandon D. Ross who each posted photographs of their marked ballots on social media following the September 9, 2014 primary election, both protest against the law and enthusiasm in voting for oneself as a political candidate for office.  These messages lose their power without the photograph of the marked ballot.  Now, willfully violating this law is a violation-level offense punishable by a fine of up to $1,000.  *See* RSA 659:35(IV); RSA 651:2(IV)(a).  In fact, the law even prevents the Plaintiffs from republishing in this Complaint their social media posts displaying their marked ballots.

4.    As a result of this unconstitutional law, future political speech by the Plaintiffs and other voters in New Hampshire that is untethered to vote corruption will be chilled, especially given the fact that the New Hampshire Attorney General's Office is enforcing RSA 659:35(I).  For example, multiple individuals who posted photographs of their marked ballots online following the November 2014 general election now risk prosecution.  As the Attorney

General's Office told the *Concord Monitor* in an article published on November 7, 2014, "We're still enforcing the law as it is currently written." *See* Jonathan Van Fleet, "More People Posting Ballot Selfies Online In Protest Of Law; Legislators Say They Will Move To Repeal," *Concord Monitor* (Nov. 7, 2014), *available at* http://www.concordmonitor.com/news/campaignmonitor/14241470-95/more-people-posting-ballot-selfies-online-in-protest-of-law-legislators-say-they-will (reporting that "[d]ozens of ['ballot selfie'] photos popped up on social media Tuesday").

5. Moreover, the Attorney General's Office is currently investigating purported violations of RSA 659:35(I) arising from the September 9, 2014 primary election. Plaintiff Andrew Langlois is currently being investigated by the Attorney General's Office for posting his marked ballot on Facebook after voting in this election. This investigation is especially troubling because it is apparent from the photograph of Mr. Langlois' marked ballot that he was engaging in political speech, not vote buying or voter coercion. On Mr. Langlois' marked ballot, he wrote the name of his recently-deceased dog "Akira" as his Republican choice for U.S. Senate. Mr. Langlois' vote and the publication of his ballot on Facebook were acts of protest against his Republican choices for U.S. Senate—each of whom Mr. Langlois disapproved as candidates. Plaintiff Representative Leon H. Rideout has also been investigated under RSA 659:35(I) for posting his marked ballot on Twitter during the September 9, 2014 primary election. RSA 659:35(I) and the Attorney General's enforcement of its provisions will inhibit protected political speech far beyond the vote corruption conduct that the law aims to address.

6. Voting is an act of extraordinary importance. And it is because of this importance that the Constitution also ensures that citizens are free to communicate their experiences at the polls, including the people for whom they voted if they so wish. There is no more potent way to

communicate one's support for a candidate than to voluntarily display a photograph of one's marked ballot depicting one's vote for that candidate. However, RSA 659:35(I) totally bans this salient form of political speech. This blanket ban is not limited in terms of time, place, or manner.

7. Accordingly, this action seeks a judgment under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 that RSA 659:35(I), both on its face and as applied, is an unconstitutional violation of the Plaintiffs' right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. The Plaintiffs also seek preliminary and permanent injunctive relief in the form of an order enjoining the State from applying or enforcing RSA 659:35(I).

## THE PARTIES

8. Plaintiff Leon H. Rideout resides in Lancaster, New Hampshire. He is a member of the New Hampshire House of Representatives, representing District 7 in Coos County, which covers Lancaster. He secured the Republican nomination for House District 7 during the September 9, 2014 primary election, and he was reelected during the November 4, 2014 general election. As a legislator and political candidate, Representative Rideout is passionate about protecting the free speech principles embodied within the First Amendment. Representative Rideout voted on two occasions during the 2013-2014 legislative session against the amendments to RSA 659:35(I) that are at issue in this case on free speech grounds.

9. Plaintiff Andrew Langlois resides in Berlin, New Hampshire. He is a former career police officer. As a former police officer and concerned citizen, Mr. Langlois has always believed that free speech rights should be protected in the United States.

10. Plaintiff Brandon D. Ross resides in Manchester, New Hampshire. He is an attorney practicing in Manchester at the law firm B.D. Ross Law Office. As an attorney, Mr.

Ross provides legal advice in business, intellectual property, appeals, litigation, estate planning, personal injury, and landlord-tenant matters. During the November 2014 general election, Mr. Ross unsuccessfully ran for one of the two seats representing District 42 in Hillsborough County (constituting Wards 1-3 in Manchester) in the New Hampshire House of Representatives. He secured one of the two Republican nominations for this District during the September 9, 2014 primary election. As both an attorney and political candidate, Mr. Ross has been a vocal advocate for free speech rights in the State of New Hampshire.

11.     William M. Gardner is the Secretary of State of the State of New Hampshire. He is named in his official capacity only. He is in charge of administering New Hampshire's election laws. His office is located at State House, Room 204, Concord, New Hampshire 03301.

12.     Secretary Gardner, personally and through the conduct of his agents, servants, and employees, acted under color of state law at all times relevant to this action.

**JURISDICTION AND VENUE**

13.     This action arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343.

14.     Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

15.     Venue in the District of New Hampshire is based on 28 U.S.C. § 1391(b).

**FACTS**

I.     **The History of HB 366**

16.     Effective September 1, 2014, RSA 659:35(I) was modified to state the following: "No voter shall allow his **_or her_** ballot to be seen by any person with the intention of letting it be

5

known how he ***or she*** is about to vote ***or how he or she has voted*** except as provided in RSA 659:20.[1] ***This prohibition shall include taking a digital image or photograph of his or her marked ballot and distributing or sharing the image via social media or by any other means***." (bolded, italicized, and underlined language reflect the modifications that became effective on September 1, 2014) (hereinafter, "HB 366").

17. A willful violation of this statute is a violation-level offense. RSA 659:35(IV). Violations are punishable by a fine not to exceed $1,000. RSA 651:2(IV)(a).

18. Under the prior version of RSA 659:35(I), it was unlawful to display one's marked ballot reflecting how one was "about to vote." As a result, the law effectively only burdened speech on election day inside the polling place between the moment a voter marked the ballot and the moment the voter placed the ballot in the ballot box. The law dates back to the early 1890s, and was codified as RSA 659:35(I) in 1979.

19. HB 366's initial amendments to RSA 659:35 were introduced by Representative Timothy Horrigan on January 3, 2013. HB 366 originated with the House Election Law Committee. The Committee revised the bill's amendments to RSA 659:35(I) during the summer and fall of 2013 to also prohibit the display of a voter's marked ballot reflecting how the voter "has voted." The revised bill, which reflected the final form of RSA 659:35(I), elaborated that "[t]his prohibition shall include … sharing the image" of a marked ballot "via social media or by any other means." The Committee then unanimously recommended the bill's passage by a vote of 17 to 0 on November 22, 2013. Under the version recommended by the House Election Law

---

[1] RSA 659:20, entitled "Assistance in Voting," states the following: "Any voter who declares to the moderator under oath that said voter needs assistance marking his or her ballot shall, upon the voter's choice and request after the moderator has informed the voter of the accessible voting options that are available at the polling place, receive the assistance of one or both of the inspectors of election detailed for that purpose by the moderator or of a person of the voter's choice provided that the person is not the voter's employer or union official. Such person so assisting shall be sworn, shall mark the ballot as directed by said voter, and shall thereafter give no information regarding the same. Such person so assisting shall leave the space within the guardrail with the voter."

Committee, a willful violation of this law was a misdemeanor offense, not a violation-level offense.

20.     On February 6, 2014, the full House of Representatives recommended the bill's passage by a vote of 156-121, though many of those who voted "nay"—like Plaintiff Representative Rideout—objected to the bill on free speech grounds.

21.     The bill was then sent to the House Committee on Criminal Justice and Public Safety to address the bill's criminal punishment.  On March 6, 2014, the Committee held a public hearing on the bill where the New Hampshire Civil Liberties Union ("NHCLU") provided testimony concerning its negative impact on free speech rights.  On March 19, 2014, the Committee left the bill's changes to RSA 659:35(I) intact, but amended the bill's language under RSA 659:35(IV) to make a willful violation of this law a violation-level offense (as opposed to a misdemeanor).  The Committee then recommended the law's passage by a vote of 9 to 6.  The minority report of the Committee recommended that the House of Representatives reject the law as "inexpedient to legislate."

22.     On or about March 25, 2014, the House of Representatives, by a vote of 198 to 96, passed HB 366 with the amendment made by the Criminal Justice and Public Safety Committee.  Plaintiff Representative Rideout, for the second time, voted against HB 366 on free speech grounds.

23.     On April 17, 2014, the Senate Public and Municipal Affairs Committee recommended that the Senate pass HB 366 by a vote of 5 to 0.  On April 25, 2014, the Senate passed the bill by voice vote.

24.     The Governor signed the bill into law on June 11, 2014, with an effective date of September 1, 2014.

25.     The purported governmental interest behind the law is to address vote buying and voter coercion.  According to Deputy Secretary of State David M. Scanlan's April 9, 2014 testimony before the Senate Public and Municipal Affairs Committee, HB 366 was necessary to update the law in light of modern technology to address vote buying, which he argued was "rampant" in the decades prior to the 1890s.  He expressed fear that "we have this great new technology now that allows people to go in the polling place, to take an image of their ballot before they put it in the ballot box, and then distribute it instantly to whomever and wherever they want to distribute it.  [This] creates a new opportunity to go back to the days prior to the 1890s when votes could be bought and purchased."  Deputy Secretary Scanlan did not cite a single incident of vote buying in New Hampshire since the 1890s, let alone a vote-buying transaction that was consummated by the display of a marked ballot on the Internet.  Deputy Secretary Scanlan echoed these same sentiments to the *New Hampshire Union Leader* following the September 9, 2014 primary election: "In the 1880s, [vote buying] was a real problem …. It was easy to see how someone voted and it was not unusual to pay as much as $10 a vote …. With digital technology, that door was opening again … where you could take a selfie of your ballot and post it on Facebook showing how you voted."  Garry Rayno, "NH Law Prohibits Displaying Votes On Social Media," *New Hampshire Union Leader* (Sept. 20, 2014), *available at*  http://www.unionleader.com/article/20140921/NEWS0621/140929909/0/SEARCH.    As the Attorney General's Office has further explained to the press: "The idea is, 'You can't verify that I voted as you asked me to vote or you gave me consideration to vote.'"  *See* Jennifer Crompton, "Lawmaker: Ban on Tweeting Ballots Violates Free Speech: Amended Law Aimed at Protecting Integrity   of   Voting   Booth,"   *WMUR*   (Sept.   24,   2014),   *available   at* http://www.wmur.com/politics/lawmaker-ban-on-tweeting-ballots-violates-free-

speech/28230690.

26.     Similarly, in Representative Horrigan's April 9, 2014 testimony before the Senate Public and Municipal Affairs Committee, he stated that HB 366 was designed, in part, to address a "scheme [where] somebody is trying to buy votes and they … make you take a picture of their ballot on their cell phone and go out and show it to a guy and he hands you a $5 or $10 bill." Representative Horrigan further testified that he did not know if anyone had "done such a scheme," but that it was worth making it illegal anyway.

27.     Representative Mary Till of the House Election Law Committee also testified in favor of HB 366 before the Senate Public and Municipal Affairs Committee on April 9, 2014. She argued that the law would help ensure that "no one is coerced to vote in a particular way." She expressed concern that "someone with authority over the voter—for example, an employer, a union [representative], or a spouse—could coerce the voter into providing a photo of his or her completed ballot to prove that they voted the way they were told to vote."[2]

28.     When it considered HB 366, the New Hampshire General Court knew that the bill would ban speech unrelated to vote-buying transactions and incidents of voter coercion.

29.     On September 22, 2014, the NHCLU submitted Right-to-Know records requests to both the Secretary of State's Office and the Office of the Attorney General concerning (i) HB 366, (ii) enforcement of RSA 659:35(I) since its enactment on September 1, 2014, (iii) enforcement of RSA 659:35(I) between January 1, 2007 and August 31, 2014, and (iv) enforcement of RSA 659:40(I-II) (which criminalizes vote bribery and voter coercion) from

---

[2] It should also be noted that, in a statement to the press prior to the November 4, 2014 election, Secretary of State William M. Gardner stated that "[i]f people can bring cameras into the polling place, they can … take pictures of your ballot without you knowing it."  *See* Laura Montenegro, "Headed To The Polls, NH? 5 Things To Know Before You Get There," *NH1* (Nov. 4, 2014), *available at* http://www.nh1.com/news/headed-to-the-polls-nh-5-things-to-know-before-you-get-there/.  This statement bears no relationship to RSA 659:35(I).  RSA 659:35(I) addresses the ability of a person to voluntarily display his or her own marked ballot, not the ability of a person to take a photograph of another person's ballot.

January 1, 2007 to the present. In the documents produced, neither the Secretary of State nor the Attorney General's Office could present a single incident in which a marked ballot was displayed through the Internet to engage in vote bribery or voter coercion.

## II. The Attorney General's Investigation Of Qualified Voters For Violating RSA 659:35(I).

30.     Since HB 366 was passed, the Attorney General's Office has been enforcing RSA 659:35(I) and actively investigating individuals who posted their marked ballots on the Internet, regardless of whether this speech is related to the State's asserted interests in passing the law.

### A.     Plaintiff Representative Leon H. Rideout

31.     Plaintiff Leon H. Rideout is a member of the House of Representatives representing District 7 in Coos County. He voted during the September 9, 2014 Republican primary election in Lancaster where he was on the ballot. During the primary election, Representative Rideout took a photograph of his marked ballot with his phone prior to casting the ballot. The marked ballot reflected that he voted for himself as well as other Republican candidates. Hours after the ballot was cast, Representative Rideout posted the photograph on Twitter, along with the text "#COOS7 vote in primary 2014#nhpolitics."

32.     The photograph Representative Rideout took and the accompanying text were pure political speech wholly unrelated to vote buying or voter coercion. Because it would be unlawful under RSA 659:35(I), Representative Rideout is unable to publish in this Complaint an un-redacted version of this photograph of his marked ballot. A redacted version of his Twitter posting is below.



As he explained to the *Nashua Telegraph*, "I did it to make a statement …. I had promised a few other [representatives] that I would post my ballot, and I did …. I think [RSA 659:35(I) is] unconstitutional …. It's really just an overreach of the government trying to control something that, in my opinion, doesn't need to be regulated." *See* David Brooks, "You Didn't Take A Picture Of Your Ballot Tuesday, Did You? (It's Illegal)," *Nashua Telegraph* (Sept. 11, 2014), *available at* http://www.nashuatelegraph.com/news/1046026-469/you-didnt-take-a-picture-of-your.html.

33. At or around the time of the publication of this *Nashua Telegraph* article on September 11, 2014, the State initiated an investigation of Representative Rideout for violating RSA 659:35(I). Paul Brodeur, an investigator from the New Hampshire Attorney General's Office, called Representative Rideout and requested an interview. As Representative Rideout described the interview to the *Nashua Telegraph*: "I told [Mr. Brodeur during the interview that]

I disagreed with the thought [behind the law] …. [I]t was a violation of freedom of speech. If somebody wants to post their ballot, it should be up to them. It definitely shouldn't be a criminal act." *See* David Brooks, "NH AG's Office Investigating 'Ballot Selfies' Posted Online," *Nashua Telegraph* (Sept. 19, 2014), *available at* http://www.nashuatelegraph.com/news/1046704-469/nh-ags-office-investigating-ballot-selfies-posted.html.

34. Following the submission of a Right-to-Know records request to the Attorney General's Office by the NHCLU on September 22, 2014, the Attorney General's Office confirmed in late October 2014 that Representative Rideout is still being investigated for violating RSA 659:35(I) and that his file is "open."

### B. Plaintiff Andrew Langlois

35. The Attorney General's Office is also investigating Plaintiff Andrew Langlois for violating RSA 659:35(I). Mr. Langlois voted during the September 9, 2014 Republican primary election in Berlin. Because Mr. Langlois did not approve of his Republican choices for U.S. Senate, Mr. Langlois wrote the name "Akira" as a write-in candidate. "Akira" is the name of Mr. Langlois' dog that passed away just days before the primary election. Prior to casting the marked ballot, Mr. Langlois then took a photograph of the ballot's U.S. Senate section with his phone while in the ballot booth. He then went home and posted the photograph on Facebook, along with commentary reflecting his frustration with his Republican choices for U.S. Senate. In short, Mr. Langlois' posting was a protest against his choices for public office—a political message that would have been far less salient without the photograph indicating that his deceased dog "Akira" was his candidate of choice.

36. The photograph and the accompanying text were pure political speech wholly unrelated to vote buying or voter coercion. Because it would be unlawful under RSA 659:35(I),

Mr. Langlois is unable to publish in this Complaint an un-redacted version of this photograph of his marked ballot. A redacted version of this photograph is below.



37.     After the primary election, Mr. Langlois received a phone call from investigator Paul Brodeur. Mr. Brodeur explained that Mr. Langlois was being investigated for posting his ballot on social media in violation of RSA 659:35(I). At first, Mr. Langlois could not believe that what he did was illegal. He told Mr. Brodeur that the phone call must be some sort of "joke." Mr. Langlois expressed surprise that the State would be investigating someone for posting a photograph of a ballot indicating that a voter had voted for his dog. Mr. Brodeur wished to schedule an in-person interview of Mr. Langlois. However, no such interview has taken place, in part, because Mr. Langlois refuses to take time away from his life to travel away from Berlin to be interviewed concerning a matter where he simply engaged in political speech protected under the First Amendment.

38.     Following the submission of a Right-to-Know records request to the Attorney

General's Office by the NHCLU on September 22, 2014, the Attorney General's Office confirmed in late October 2014 that Mr. Langlois is still being investigated for violating RSA 659:35(I) and that his file is "open."

**C.  Plaintiff Brandon D. Ross**

39.     Plaintiff Brandon D. Ross voted during the September 9, 2014 Republican primary election in Manchester.  Mr. Ross was also a candidate on the ballot at the time, as he was running to be one of two Republican nominees to represent District 42's two seats in the New Hampshire House of Representatives (which represents Wards 1 through 3 in Manchester). After Mr. Ross marked his ballot with his choices and prior to the ballot being cast, he took a photograph of the ballot with his phone.  His marked ballot reflected that he was voting for himself, as well as other candidates.  Mr. Ross took this picture to keep a record of his vote, to assist him in the future with remembering other candidates for whom he voted, and to preserve the opportunity to show his marked ballot to friends as a means of demonstrating his support for certain political candidates.  Mr. Ross was aware of RSA 659:35(I) when he took this photograph, but—demonstrating the chilling effect of the law—he did not immediately publish the photograph because of the law's financial penalties.

40.     Over one week later, Mr. Ross became aware that the New Hampshire Attorney General's Office was investigating voters for violating RSA 659:35(I).  In response, on September 19, 2014, Mr. Ross posted the photograph of his marked ballot on Facebook with the text "Come at me bro."  The text symbolized his political objection to RSA 659:35(I) on free speech grounds and his deep concern about the Attorney General's investigations of qualified voters.  In short, the picture, combined with the text, was a form of political protest against the Attorney General's enforcement of RSA 659:35(I) and a statement that he was willing to risk

prosecution in order to stand up for his First Amendment rights.

41.     The photograph and the accompanying text were pure political speech wholly unrelated to vote buying or voter coercion.  Because it would be unlawful under RSA 659:35(I), Mr. Ross is unable to publish in this Complaint an un-redacted version of this photograph of his marked ballot.  A redacted version of his Facebook posting is below.



42.     The Plaintiffs are troubled at the Office of the Attorney General's investigation of qualified voters who are engaging in protected speech far away from a polling place that has no nexus to the asserted governmental interests behind the law.  This investigation and threatened enforcement is intimidating and will have a chilling effect on others who wish to engage in this same form of protected political speech.  Indeed, the Plaintiffs wish to continue engaging in this form of political speech that is prohibited by the plain language of RSA 659:35(I).  However, in light of the law's terms and the Attorney General's enforcement efforts, Plaintiffs reasonably believe that they will be investigated and prosecuted if they continue to do so.  Absent relief

from this Court, Plaintiffs will be required to self-censor their expression or face punishment by the State. Thus, the law is imposing and will continue to impose irreparable harm upon Plaintiffs' free speech activities unless it is enjoined.

**III. HB 366 Violates The First Amendment Because It Renders Illegal Pure Political Speech Away From A Polling Place That Does Not Effectuate The Purpose Of The Statute.**

43. The United States Supreme Court "has characterized the freedom of speech and that of the press as fundamental personal rights and liberties. The phrase is not an empty one and [is] not lightly used." *Schneider v. New Jersey*, 308 U.S. 147, 161 (1939) (footnote omitted). "It has become axiomatic that '[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms.'" *United States v. Robel*, 389 U.S. 258, 265 (1967) (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

**A. RSA 659:35(I) Fails Strict Scrutiny**

44. RSA 659:35(I) is a prior restraint on speech, as the law limits in advance the exercise of protected First Amendment activity—namely, truthful political speech beyond the polling place about a matter of public significance. As a result, this law comes to this Court bearing a heavy presumption against its constitutional validity.

45. RSA 659:35(I) is also a content-based restriction on voluntary, truthful political speech addressing a matter of public concern, as the law prohibits the revelation of specific content—namely, a marked ballot demonstrating how a voter "has voted." A ballot omitting this content is not subject to the law's prohibitions. This is a blanket ban of a particular form of speech that is not limited to time, place, or manner. Thus, this law must meet a daunting test—it must be narrowly tailored to serve a compelling governmental interest.

46. While there may be a compelling governmental interest in addressing vote buying

and voter coercion, the State has no interest—let alone a compelling one—regulating pure political speech far beyond the polling place that is unrelated to these asserted interests. Moreover, the State has presented no evidence either in the legislative history of HB 366 or in pre-litigation discovery indicating that a photograph of a marked ballot has ever been displayed through the Internet as part of a scheme to buy a vote or engage in voter coercion.

47.     Under any standard of constitutional scrutiny, RSA 659:35(I) cannot be viewed as a narrowly-tailored means of addressing vote buying and voter coercion. Vote bribery and voter coercion are already illegal under RSA 659:40(I-II). These laws do not—unlike RSA 659:35(I)—sweep within their scope a wide array of innocent, protected political speech. Rather than creating a blanket ban on political speech unrelated to these asserted interests under RSA 659:35(I), the more narrowly-tailored response would be to aggressively investigate and prosecute vote buying and voter coercion under RSA 659:40. For example, if a person publicly posts a picture of a marked ballot on the Internet, the State could then identify and investigate the voter for a potential violation of RSA 659:40 rather than penalize the voter for engaging in innocent political speech under RSA 659:35(I). Simply put, the State should not be broadly prohibiting peaceful political speech with the hope that such a prohibition sweeps within its scope underlying criminal conduct.

48.     The law is also not narrowly tailored given that it indefinitely bans the posting of one's ballot outside the polling place, including postings made months or even years after the election. Any concerns the State may have about voter coercion are only relevant while the voting process is in progress, not years after the election. In fact, RSA 659:35(I) contained such a temporal restriction before it was amended by HB 366, as it only limited the display of a ballot indicating how one is "about to vote." Thus, the prior version of the law was effectively

circumscribed to the disclosure of one's ballot in the polling place on election day before the ballot was actually cast.

49.     RSA 659:35(I) also cannot possibly serve the purpose of protecting the victims of voter coercion because the law actually penalizes victims of purported voter coercion.  If the State is concerned about a voter being coerced to vote in a certain way by, for example, a spouse, employer, or union representative, this statute actually penalizes the victimized voter who is alleged to have displayed his or her ballot to the coercing party.

50.     Because RSA 659:35(I) cannot survive any form of constitutional scrutiny—let alone strict scrutiny—the law violates the First and Fourteenth Amendments to the United States Constitution.

### B.     RSA 659:35(I) Is Unconstitutionally Overbroad

51.     A statute is overbroad if it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

52.     "[W]hen statutes regulate or proscribe speech and when 'no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution,' … the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972).

53.     The overbreadth doctrine "is predicated on the sensitive nature of protected expression." *New York v. Ferber*, 458 U.S. 747, 768 (1972).  The doctrine "is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising

their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding*, 405 U.S. at 521.

54. Here, RSA 659:35(I) is, on its face, overly broad and unconstitutionally infringes upon the Plaintiffs' rights to freedom of speech and expression by restricting a substantial volume of constitutionally-protected political speech.

55. Where the prior version of RSA 659:35(I) was effectively limited to banning the display of a marked ballot in a polling place prior to the ballot being cast on election day, RSA 659:35(I) now prohibits this same form of speech (i) far beyond the polling place, (ii) indefinitely after the date of the election, and (iii) without any nexus to vote corruption. For example, the protected political speech that is swept within the scope of RSA 659:35(I) now includes the following:

    a.    The publication on Facebook of a photograph of a marked ballot by an 18-year-old, newly-minted voter—or anyone else for that matter—who is excited about voting in her first presidential election and wishes to publicly show her enthusiastic support for a candidate using the powerful imagery of the very document she used to participate in the democratic process for the first time;

    b.    The publication on Facebook by Plaintiff Andrew Langlois of a photograph of his marked ballot reflecting that he wrote in the name of his recently-deceased dog "Akira" as his Republican selection for the U.S. Senate to protest against the Senate candidates listed on the Republican ballot;

    c.    The publication on social media by Plaintiff political candidates Leon H. Rideout and Brandon D. Ross of photographs of their marked ballots reflecting that they voted for themselves to demonstrate a sense of pride and enthusiasm in their candidacy;

    d.    The publication on social media by Plaintiffs Leon H. Rideout and Brandon D. Ross of their marked ballots reflecting their political protest against RSA 659:35(I) for its violation of fundamental free speech rights; and

e.      In the privacy of their own home, a husband's display of a photograph of his marked ballot to his wife days (or even months or years) after the election to show his pride for having supported certain candidates.

56.      Plaintiffs are prohibited under RSA 659:35(I) from engaging in any of the speech described above, even though each of these activities has nothing to do with any unlawful activity. Regulating this speech in no way effectuates the purpose of the law.

57.      Because RSA 659:35(I) restricts such a substantial amount of constitutionally-protected speech, it violates the First and Fourteenth Amendments to the United States Constitution.

## CLAIM FOR RELIEF

### Count I
### (First and Fourteenth Amendments to the U.S. Constitution, as enforced by 42 U.S.C. § 1983)

58.      Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

59.      42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1988 allows the court to award attorney's fees and costs to the prevailing party in an action brought under Section 1983.

60.      The First Amendment to the United States Constitution, as applicable to the States through the Fourteenth Amendment, prohibits the making of any law that "abridg[es] the freedom of speech."

61.     As described above, RSA 659:35(I), on its face and as applied to the Plaintiffs' speech, unconstitutionally infringes or imminently threatens to infringe Plaintiffs' rights under the First and Fourteenth Amendments, including their rights to freedom of speech and expression.

62.     RSA 659:35(I), on its face and as applied to Plaintiffs' speech, is a prior restraint on speech in that it restricts the speech of Plaintiffs and other New Hampshire voters before the speech occurs.

63.     RSA 659:35(I), on its face and as applied to Plaintiffs' speech, is a content-based restriction on pure political speech outside a polling place that bears no relationship to the State's asserted interests in enacting the law.  The State has no interest banning pure political speech that is unrelated to these purported interests.

64.     RSA 659:35(I), on its face and as applied to Plaintiffs' speech, is not narrowly tailored towards the advancement of any government interest, let alone a significant or compelling one.

65.     RSA 659:35(I), on its face and as applied to Plaintiffs' speech, is substantially overbroad in that it restricts a large amount of protected speech of the Plaintiffs and other New Hampshire voters.

66.     Accordingly, RSA 659:35(I), on its face and as applied to the Plaintiffs' speech, violates the First and Fourteenth Amendments.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

a)     Declare that RSA 659:35(I) is facially unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution;

b)     Declare that RSA 659:35(I) is unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution as applied to the speech engaged in by the Plaintiffs;

c)     Temporarily, preliminarily, and permanently restrain and enjoin the State of New Hampshire from enforcing RSA 659:35(I);

d)   Grant to Plaintiffs an award of nominal damages;

e)   Award Plaintiffs attorneys' fees in this action pursuant to 42. U.S.C. § 1988(b);

f)   Award Plaintiffs their costs of suit; and

g)   Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

LEON H. RIDEOUT, ANDREW LANGLOIS, and
BRANDON D. ROSS,

By and through their attorneys affiliated with the New
Hampshire Civil Liberties Union Foundation,


*/s/ Gilles R. Bissonnette*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
NEW HAMPSHIRE CIVIL LIBERTIES UNION
18 Low Avenue
Concord, NH 03301
Tel.: 603.224.5591
Gilles@nhclu.org

William E. Christie (N.H. Bar. No. 11255)
SHAHEEN & GORDON, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
Tel.: 603.225.7262
wchristie@shaheengordon.com


Dated:   November 12, 2014

## **VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.


Executed on November 12, 2014

*/s/ Leon H. Rideout*
LEON H. RIDEOUT

## **VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on November 12, 2014

*/s/ Andrew Langlois*

ANDREW LANGLOIS

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on November 12, 2014

*/s/ Brandon D. Ross*
BRANDON D. ROSS

## CERTIFICATE OF SERVICE

I, Gilles Bissonnette, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). On the date of this filing, a copy of this document has also been sent by email to the following:

Richard Head (Richard.Head@doj.nh.gov)
Stephen G. LaBonte (Stephen.LaBonte@doj.nh.gov)
New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301

*/s/ Gilles Bissonnette*
Gilles Bissonnette